# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

Empower Texans, Inc., Brandon C. Waltens, and Destin R. Sensky

*Plaintiffs*,

v.

Charlie L. Geren, in his official capacity as Chairman of the Committee on House Administration of the Texas House of Representatives,

*Defendant*.

**COMPLAINT**

Civil Action No. 19-422

Plaintiffs Empower Texans, Inc., Brandon C. Waltens, and Destin R. Sensky bring this action against Defendant for declaratory and injunctive relief and allege as follows:

## Introduction

1.     This action seeks declaratory and injunctive relief to remedy unconstitutional viewpoint discrimination against Plaintiffs. Plaintiffs are entitled to the same level of access to governmental proceedings as other media outlets.

2.     Plaintiffs are a non-profit media organization and its employees who report on the proceedings of the Texas Legislature. Defendant Geren is the chairman of the Texas House of Representatives Committee on House Administration. Geren has routinely and openly expressed hostility toward Plaintiffs on account of their publications.

3.     The evidence demonstrates that Geren is engaging in viewpoint discrimination in refusing to issue Texas House of Representatives media credentials pass cards to Plaintiffs and in denying Plaintiffs equal access to the hall of the House in order to report on its proceedings while making those facilities available to hundreds of other journalists.

4.     Defendant's viewpoint discrimination is causing an ongoing, irreparable injury to Plaintiffs under the First Amendment to the United States Constitution that this Court must remedy.

## Jurisdiction and Venue

5.     This action arises under the First and Fourteenth Amendments to the United States Constitution and is brought pursuant to 42 U.S.C. § 1983. Additionally, Plaintiffs seek a declaration of their rights pursuant to 28 U.S.C. §2201–2202.

6.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

7.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because defendant resides in this district. Additionally, a substantial part of the events giving rise to this claim occurred in this district.

## Parties

8.     Plaintiff Empower Texans, Inc. ("Empower Texans") is a Texas Nonprofit Corporation with its principal office in Midland, Texas. Empower Texans is the publisher of the news magazine *Texas Scorecard*. "Texas Scorecard" is an assumed name of Empower Texans under Texas law.

9.     Plaintiff Brandon C. Waltens ("Waltens") is an employee of Empower Texans, Inc. and serves as Capitol Bureau Chief for *Texas Scorecard*. His duties require him to report primarily on the sessions of the Texas Legislature. No part of his salary for legislative coverage is paid by any individual or organization other than Empower Texans.

10.     Plaintiff Destin R. Sensky ("Sensky") is an employee of Empower Texans, Inc. and serves as Capitol Correspondent for *Texas Scorecard*. His duties require him to report primarily on the sessions of the Texas Legislature. No part of his salary for legislative coverage is paid by any individual or organization other than Empower Texans.

11.     Defendant Charlie L. Geren ("Geren") is the Texas state representative elected from Texas House District 99. Geren serves as the chairman of the Texas House of Representatives Committee on House Administration for the 86th Texas Legislature. He served in the same role for the 85th Texas Legislature. Geren is sued in his official capacity as chairman of the Committee on House Administration.

12.     By a motion of the Committee on House Administration, adopted unanimously on January 29, 2019, Geren has been "grant[ed] the authority to act on the Committee's behalf in matters involving the … management of House facilities, coordination with House support personnel, and general enforcement of the House policies and procedures."[1]

13.     The Committee on House Administration is empowered under the Housekeeping Resolution, to "be in charge of and provide for the protection, maintenance, and use of the hall of the house, all committee rooms, … and other space under the jurisdiction of the house."[2]

14.     The Committee on House Administration is tasked under the House Rules "with jurisdiction over … administrative operation of the house and its employees; … [and] all admissions to the floor during sessions of the house."[3] The Committee is tasked with receiving applications from media representatives and issuing pass cards to applicants for purposes of access to the hall of the House while the House is in session.[4]

––––––––––––––––––––

[1] Minutes of the January 29, 2019 Hearing of the Texas House of Representatives Committee on House Administration, 86th Leg., Reg. Sess. (TX 2019) (accessed online at https://capitol.texas.gov/tlodocs/86R/minutes/pdf/C3002019012909301.PDF on April 16, 2019).

[2] H.R. 3, 86th Leg., Reg. Sess. (TX 2019).

[3] H. Rule 3, §16, 86th Leg., Reg. Sess. (TX 2019).

[4] *See* H. Rule 5, §20, 86th Leg., Reg. Sess. (TX 2019).

15.     Defendant was at all relevant times acting under color of state law in taking the actions complained of herein.

## Statement of Facts

### *The Right to Equal Access for Media Representatives to Governmental Proceedings is Protected by the First Amendment*

16.     "Not only newsmen and the publications for which they write, but also the public at large have an interest protected by the [First Amendment] in assuring that . . . individual newsmen not be arbitrarily excluded from sources of information."[5] In *Sherrill v. Knight*, the D.C. Circuit concluded the White House could not deny an application for a press pass without providing "notice of the factual bases for denial, an opportunity for the applicant to respond to these, and a final written statement of the reasons for denial."[6]

17.     "[N]otice . . . of the factual bases for denial with an opportunity to rebut is a minimum prerequisite for ensuring that the denial is . . . [not] based on arbitrary or less than compelling reasons."[7] A final written statement of the reasons for denial is necessary to ensure the government "has neither taken additional, undisclosed information into account, nor responded irrationally to matters put forward by way of rebuttal or explanation."[8]

---

[5] *Sherrill v. Knight*, 569 F.2d 124, 129–30 (D.C. Cir. 1977).

[6] *Id.* at 130.

[7] *Id.* at 131.

[8] *Id.*

18.     A long and unbroken line of cases have established that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."[9] When First Amendment rights are burdened, there is a presumption of irreparable harm.[10]

19.      "[O]nce there is a public function, public comment, and participation by some of the media, the First Amendment requires equal access to all of the media."[11] "All representatives of news organizations must not only be given equal access, but within reasonable limits, access with equal convenience to official news sources."[12] "This right is not absolute, but it may not be infringed upon by state officials in the absence of a compelling government interest to the contrary."[13]

20.      "The standards for issuance of a press pass must be narrowly drawn, reasonable and definite and they must be publicly available."[14] "Furthermore, refusal to timely inform an applicant as to the reasons for denial of a pass, that is, in what respect(s)

---

[9] *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

[10] *See Cmty. Communications v. City of Boulder*, 660 F.2d 1370, 1376 (10th Cir. 1981).

[11] *Am. Broad. Cos. v. Cuomo*, 570 F.2d 1080, 1083 (2d Cir. 1977).

[12] *Westinghouse Broad. Co., Inc. v. Dukakis*, 409 F. Supp. 895, 896 (D. Mass. 1976).

[13] *Id.*

[14] *Quad-City Cmty. News Serv., Inc. v. Jebens*, 334 F. Supp. 8, 17 (S.D. Iowa 1971).

its application is found deficient according to the standards is as void of due process as is the lack of standards in the first instance."[15]

21.    "Where First Amendment rights are involved, the asserted state interest must be compelling and the proposed state action must be the least restrictive means available for the asserted governmental end."[16] "Any classification which serves to penalize or restrain the exercise of a First Amendment right, unless shown to be necessary to promote a *compelling* governmental interest is unconstitutional."[17]

### *The Texas House of Representatives Provides Special Access to Media Representatives to the Hall of the House During its Sessions*

22.    The Texas House Rules provide for media access to the House chamber while the House is in session:

> Sec. 20. MEDIA ACCESS TO HOUSE CHAMBER.
>
> (a) When the house is in session, no media representative shall be admitted to the floor of the house or allowed its privileges unless the person is:
> (1) employed by a print, broadcast, or Internet news organization, or by a wire service serving those organizations:
> (A) whose principal business is the periodic dissemination of original news and opinion of interest to a broad segment of the public;
> (B) which has published or operated continuously for 18 months; and

---

[15] *Id.*

[16] *Borreca v. Fasi*, 369 F. Supp. 906, 909 (D. Haw. 1974).

[17] Quad-City, 334 F. Supp. at 15.

(C) whose publications or operations are editorially independent of any institution, foundation, or interest group that lobbies the government or that is not principally a general news organization; and

(2) not engaged in any lobbying or paid advocacy, advertising, publicity, or promotion work for any individual, political party, corporation, organization, or government agency.

(b) Any media representative seeking admission to the floor of the house under the provisions of this section must submit to the Committee on House Administration:       (1)       a notarized application in a form determined by the committee; and

(2) a letter from the media representative's employer certifying that:

(A) the media representative is engaged primarily in reporting the sessions of the legislature; and

(B) no part of the media representative's salary for legislative coverage is paid from a source other than the news organization that employs the media representative.

(c) Regularly accredited media representatives who have duly qualified under the provisions of this section may, when requested to do so, make recommendations through their professional committees to the Committee on House Administration as to the sufficiency or insufficiency of the credentials of any person seeking admission to the floor of the house under this section.

(d) If the Committee on House Administration determines that a person's media credentials meet the requirements of this section, the committee shall issue a pass card to the person. The committee may impose a fee to cover the costs of issuing a pass card. This pass card must be presented to the doorkeeper each time the person seeks admission to the floor of the house while the house is in session. Pass cards issued under this section shall not be transferable. The failure of a media representative to maintain the requirements of this section may

– 8 –

result in the revocation of the pass card. Persons admitted to the floor of the house pursuant to the provisions of this section shall work in appropriate convenient seats or work stations in the house, which shall be designated for that purpose by the Committee on House Administration.

...

(g) A member of the house who believes a media representative granted privileges under this section does not meet the requirements of this section or has abused the privileges may submit a written complaint to the Committee on House Administration. The committee shall investigate the complaint and may temporarily suspend the media representative's privileges pending the investigation. The committee shall notify the subject of the complaint of the time and place of a hearing on the complaint. Following the hearing, the media representative's privileges granted under this section are revoked if the committee determines that the allegations contained in the complaint are valid.[18]

23.     On February 19th, 2019, Plaintiff Empower Texans, through legal counsel, requested copies of all media credentials applications received by the House of Representatives for the 86th Texas Legislature since August 1, 2018. The House Business Office produced 1,735 pages of documents relating to the disposition of media credentials applications.

24.     A review of these records demonstrates that the House has received and approved applications for hundreds of media representatives, including representatives from the following outlets: The Associated Press, *The Austin American-Statesman*, *The*

---

[18] H. Rule 5, §20, 86th Leg., Reg. Sess. (TX 2019).

*Austin Chronicle*, Bob Daemmrich Photo, Inc., *Capitol Inside*, *CBS Austin/Telemundo*/Sinclair Broadcasting Group, *Christian Reporter News*, *Come and Talk It*, *Corpus Christi Caller-Times*, Courthouse News Service, *The Cuero Record*, *The Daily Texan* (a division of the University of Texas at Austin), *The Dallas Morning News*, *The Dallas Voice*, *The El Paso Times*, *The Fort Worth Star Telegram*, *Houston Business Connections*, Hearst Newspapers/*Houston Chronicle*/*San Antonio Express News*, *Houston Informer News*/Freemen's Publishing Company, KAGS, KAKW Univision Austin, KAMR Local News 4, KBTX Media, KERA 90.1 FM, KHOU-TV, KIII-TV, KAMR, KAVU TV News 25, KJTV, KLRU, KOSA-TV, KPRC-TV, KRIS 6 News, KRIV Fox 26, KSAT 12 News, KSAT TV, KTBC, KTRK, KTVT, KUT 90.5 (a division of the University of Texas at Austin), KUVN, KVDA Telemundo 60, KVUE, KXAN, KXAS, KXXV-TV, Politico.com, *Quorum Report*, Radio Bilingue, Inc., *The San Marco Daily Record*, *Specrtum News*/Charter Communications, *Telemundo Austin*, Texas Legislative Service, Texas Media Corp, *Texas Monthly*, *Texas Observer*, Texas Public Radio, *Texas Standard*, Texas State Networks/CBS Radio News/Entercom, Texcom Television Productions, *The Facts*, Univision Network News, *US News & World Report*, USA Today Network, Washington Post Talent Network, WFAA, and *The Wise County Messenger*.

25.    The records show the House Business Office working with all other applicants to correct errors in applications, and to adjust applications. In addition, the House Business Office, under Geren's leadership, appeared to repeatedly ignore conflicting information in order to approve freelancers.

26.    In no case did any applicant appear to have been denied a media credential. Three applications appear to have been withdrawn following conversations between the

applicants and the House Business Office: Two applications from the University of Texas Rio Grande Valley News and Internal Communication Department, and one application from the *Ellis County Press/Focus Daily News*, apparently on account of the applicant also being employed by a state representative.

27.     In no reviewed case other than Empower Texans did the House Business Office appear to inquire whether any publication was "editorially independent of any institution, foundation, or interest group that lobbies the government or that is not principally a general news organization."

### *Empower Texans, Its Publications, and Its Reporters Meet the Requirements for Issuance of House Media Credentials*

28.     Empower Texans is a general news organization which publishes a variety of news products. Its principal product is *Texas Scorecard*, which Empower Texans has published since January 2015.

29.     *Texas Scorecard* is a news magazine published in print to subscribers across the state on a bi-weekly basis during sessions of the Texas Legislature and monthly during the interims. *Texas Scorecard* is published online at www.TexasScorecard.com on a daily basis.

30.     In addition to being published online, in print, and in a weekly email digest, *Texas Scorecard's* articles are also distributed through social media, including through the Empower Texans Facebook page, which as of March 13, 2019, had 202,400 followers. For comparison's sake, the major daily newspapers in Texas had the following number of followers on the same date:

| | |
|---|---|
| *Austin American-Statesman* | 280,916 |
| *Corpus Christi Caller-Times* | 96,002 |
| *The Dallas Morning News* | 440,477 |
| *El Paso Times* | 147,613 |
| *Fort Worth Star Telegram* | 154,606 |
| *Houston Chronicle* | 473,725 |
| *Lubbock Avalanche-Journal* | 31,952 |
| *The Monitor* | 60,401 |
| *San Antonio Express-News* | 348,819 |
| *Waco Tribune-Herald* | 31,340 |

31.     *Texas Scorecard* is focused on covering news related to local, state, and national government, and has recently ventured into covering local sports as well. The publication's motto is "Someone's always keeping score. We think it ought to be the taxpayers."

32.     In the Texas Capitol, Empower Texans employs two full-time reporters: Plaintiff Brandon Waltens, who serves as Capitol Bureau Chief, and Plaintiff Destin Sensky, who serves as Capitol Correspondent. Their duties require them to report primarily on the sessions of the Legislature and no part of their salaries for legislative coverage is paid for by any individual or organization other than Empower Texans.

33.     In addition to the Capitol Bureau, *Texas Scorecard* maintains bureaus in Central Texas, the Dallas/Fort Worth Metroplex, East Texas, Houston, the Rio Grande Valley, and West Texas.

34.     Empower Texas also publishes a variety of other news products. Empower Texans operates the 1836 Studios in Austin, Texas, through which it publishes *Texas Scorecard Radio* and *Sunday Scorecard*.

35.     *Texas Scorecard Radio* is a half hour radio program published weekly in cooperation with American Radio Journal to radio stations around the state of Texas and as a podcast available on iTunes, GooglePlay, Soundcloud, Stitcher, and Spotify. The show typically features three segments from the *Texas Scorecard* bureaus as well as a guest interview and a commentary. *Sunday Scorecard* is a weekly video broadcast on Facebook Live during the legislative session on Sunday evenings. Each show typically recaps important news of the week, includes a guest interview, and previews events that are expected in the week to come.

36.     Since 2007, Empower Texans has published the *Fiscal Responsibility Index*. This is also a general news product that consists of an index of votes taken by legislators that is published following each legislative session. Through it, Empower Texans reports the voting records of legislators to Texans interested in knowing how the legislators they elected voted on fiscal and role-of-government issues.

37.     Empower Texans also recently began publishing in 2018 *The Texas Minute*, a daily email digest summarizing its reporting and the reporting of other outlets regarding local, state, and federal government. Designed for Texans on-the-go, *The Texas Minute* is

delivered to Texans' email inboxes each morning and is designed to be read in a minute or less.

38.     Empower Texans' news products contain editorial content, and writers for Empower Texans often take positions on candidates and legislation. However, no employee of Empower Texans is required to register as a lobbyist and the organization does not employ or contract with any person who is required to register as a lobbyist. Likewise, Empower Texans is editorially independent from any outside person, entity, or organization.

39.     Accordingly, Empower Texans, its publications, and its employees, Waltens and Sensky, meet the requirements of Texas House Rule 5, Section 20.

### Empower Texans, its Publications, and its Reporters Have Been Denied Equal Access to the Hall of the House

40.     On January 3, 2019, Plaintiffs Waltens and Sensky submitted to the Texas House and Texas Senate "Media Credentials Applications" as employees of *Texas Scorecard*, accompanied by a letter from *Texas Scorecard* Managing Editor and Empower Texans Vice President for Communications Morgan Williamson certifying they are employed full time by *Texas Scorecard* as Capitol Bureau Chief and Capitol Correspondent, respectively, that *Texas Scorecard* has been published in both print and digital editions since 2015, that Waltens' and Sensky's duties require them to report primarily on the sessions of the legislature and no part of their salary for legislative coverage is paid by any individual or organization other than *Texas Scorecard*, an assumed name of Empower Texans under Texas law.

41.     The Texas Senate promptly issued media credentials to Waltens and Sensky and they have reported from the floor of the Texas Senate during the 86th Texas Legislature without incident.

42.     On January 4, 2019, Defendant Charlie L. Geren sent letters to Plaintiffs Waltens and Sensky on Committee on House Administration letterhead stating he did not believe they were eligible for a media credential. Specifically, he wrote:

> "It is [sic] has come to my attention that the organization you are employed by, Texas Scorecard, has a close association with a general-purpose political committee (GPAC) and that the organization's website prominently display advocacy on policy matters before the legislature. Based on this information, I believe that you are not eligible for a media credential."

43.     Geren added: "According to records available on the Texas Ethics Commission website, a GPAC with the name Empower Texans PAC is located at the same address given for your employer."

44.     The language in Geren's letter matched the language from a letter dated January 5, 2017, from Geren to John Cary Cheshire, who was then employed as Capitol Correspondent for *Texas Scorecard* for the 85th Texas Legislature, withdrawing the "December 19, 2016, provisional approval of [his] application" for media credentials.

45.     Geren's repeated use of the same 2017 letter in 2019 to reject Waltens and Sensky's applications is a demonstration of bad faith on Geren's part because the facts changed in the intervening two years. Unlike in 2017, as of January, 2019, the Empower Texans PAC was registered with the Texas Ethics Commission at an address in Cove, Texas that was not used by Empower Texans in any way. This proves Geren merely used the issue

regarding the address for the Empower Texans PAC as a pretense to cover for his viewpoint discrimination against Empower Texans and *Texas Scorecard*.

46.     On February 26, 2019, Empower Texans brought this issue to the attention of Texas House Speaker Dennis Bonnen in a letter. The letter precipitated a March 5, 2019, response from James Freeman of the House Business Office, which is under Geren's leadership. Freeman's letter confirmed that, despite Geren's January 4, 2019 letter, Waltens' and Sensky's applications remain under review. Freeman asked for additional information. Specifically, Freeman wrote:

> "To process their applications, I need additional information to verify their eligibility under Rule 5 Section 20 of the Rules of the Texas House. Can you please provide me with information sufficient to verify that Empower Texans Inc. d/b/a Texas Scorecard is editorially independent of any institution, foundation, or interest group that lobbies the government or is not principally a general news organization?"

47.     On March 13, 2019, Empower Texans, through counsel, provided a letter from *Texas Scorecard* managing editor Morgan Williamson describing the organization's status as a general news organization. Empower Texans also sought definitions from Freeman of "editorially independent," "lobbies the government," and "general news organization."

48.     Despite further attempts at communication, Geren and his employees have refused to issue media credentials to Plaintiffs, and have refused to define the terms or say what material Geren requires to further process Waltens' and Sensky's applications.

*Geren Engaged in Bad Faith Viewpoint Discrimination Against Plaintiffs*

49.     Defendant Geren's January 4, 2019 letter copying his denial letter from 2017 is direct evidence of his bad faith denial of Plaintiffs' applications on the basis of viewpoint discrimination. It is clear that Geren did not actually review Texas Ethics Commission records in 2019 in order to conclude that Empower Texans shared an address with a GPAC because that was no longer true in 2019, as it was in 2017. The reason initially given for denying Plaintiffs applications was a pretense for Geren's viewpoint discrimination; a pretense that appears to have been abandoned in subsequent communications.

50.     Geren frequently demonstrates his distaste for Empower Texans and its employees on Social Media. For example, on August 6, 2013, Empower Texans CEO Michael Quinn Sullivan tweeted "Pretty sure this clunker from @Budget is the worst rent car. Ever." Geren went out of his way to tweet at Sullivan and Budget "if you did not complain what would you do" [sic].

51.     Similarly, on August 27, 2017, Geren went out of his way to tweet at Empower Texans CEO Michael Quinn Sullivan. When Sullivan simply tweeted "Weekend theme song" and shared the song "Raindrops Keep Falling on My Head" by B.J. Thomas, Geren tweeted at him "Again no class."

52.     On June 19, 2018, Geren tweeted at Empower Texans General Counsel Tony McDonald, in response to a conversation between him and Emily Ramshaw of the Texas Tribune, saying "If there are two things we definitely don't need Tony's input on, its [sic] what qualifies as journalism and lying."

53.     When *Texas Scorecard*'s Dallas/Fort Worth Metroplex Bureau Chief Erin Anderson tweeted about a tax increase in Azle I.S.D. on September 11, 2018, Geren replied:

"You don't care about lower property taxes, I do. You just do the bidding and lying for a few rich men in Midland & Cisco." He also tweeted about Empower Texans' coverage of the Azle I.S.D. tax ratification election saying "Empower Texans lies yet again."

54.     Geren's distaste for Empower Texans may stem from its endorsements in his races for reelection and his performance on the *Fiscal Responsibility Index*. Geren has regularly earned grades of "F" on the *Index*. Accordingly, Empower Texans has repeatedly endorsed Geren's challengers in the Republican primary election.

55.     "Newspapers … are subject to criticism, and the right of a governmental official to criticize is within First Amendment guarantees."[19] "But when criticism transforms into an attempt to use the powers of governmental office to intimidate or to discipline the press or one of its members because of what appears in print, a compelling governmental interest that cannot be served by less restrictive means must be shown for such use to meet Constitutional standards."[20]

## Count I
## 42 U.S.C. §§ 1983, 1988
## Violation of the First Amendment
## (Viewpoint Discrimination Against Plaintiffs)

56.     Plaintiffs repeat and reallege each of the foregoing allegations in this Complaint.

---

[19] Borreca, 369 F. Supp. at 910.

[20] *Id.*

57.     By refusing to issue Texas House of Representatives media credentials to Plaintiffs, and by denying Plaintiffs access to the hall of the House equal to that afforded to other media representatives, Defendant is violating Plaintiffs' rights to free speech and freedom of the press under the First Amendment, as incorporated to the states through the Fourteenth Amendment.

58.     Defendant has no compelling interest in denying Plaintiffs access equal to that of other media representatives. Defendant has authorized hundreds of other journalists and dozens of media outlets to access the hall of the House while the House is in session.

59.     Defendant has engaged in unconstitutional viewpoint discrimination against Plaintiffs while acting under color of state law. As a result of Defendant's viewpoint discrimination, Plaintiffs are suffering irreparable injury for which there is no adequate remedy at law. Absent intervention by this Court, Plaintiffs will continue to suffer irreparable injury.

60.     Plaintiffs are entitled to a preliminary and permanent injunction ordering Defendant to issue Texas House of Representatives media credentials pass cards for the 86th Texas Legislature to Plaintiffs Waltens and Sensky and prohibiting Defendant from denying Plaintiffs access to the hall of the Texas House of Representatives in the same manner as other media representatives.

61.     Plaintiffs are entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**Count II**
**42 U.S.C. §§ 1983, 1988**
**Violation of the First Amendment**
**(Procedures for Applying for House Media Credentials)**

62.     Plaintiffs repeat and reallege each of the foregoing allegations in this Complaint.

63.     To the extent the House of Representatives wishes to set standards for the issuance of media credentials, those standards "must be narrowly drawn, reasonable and definite and they must be publicly available."[21] "Refusal to timely inform an applicant as to the reasons for denial of a pass is as void of due process as is the lack of standards in the first instance."[22]

64.     "[N]otice . . . of the factual bases for denial with an opportunity to rebut is a minimum prerequisite for ensuring that the denial is . . . [not] based on arbitrary or less than compelling reasons."[23] A final written statement of the reasons for denial is necessary to ensure the government "has neither taken additional, undisclosed information into account, nor responded irrationally to matters put forward by way of rebuttal or explanation."[24]

---

[21] *Quad-City Cmty. News Serv., Inc. v. Jebens*, 334 F. Supp. 8, 17 (S.D. Iowa 1971)

[22] *Id.*

[23] *Sherrill v. Knight, 569 F.2d 124, 131 (D.C. Cir. 1977).*

[24] *Id.*

65.     Here, Defendant has failed to set standards that are narrowly drawn, reasonable and definite. Defendant has taken months to issue a decision on Plaintiffs' applications, has refused to give Plaintiffs a reason for denial of their applications, and has refused to give Plaintiffs a hearing in which to rebut any reasons. In fact, Defendant has even refused to answer basic questions about how terms contained in House rules are defined or applied and has refused to tell Plaintiffs what materials, in addition to their application materials, they are expected to provide. Defendant took all of these unconstitutional actions while acting under color of state law.

66.     Defendant's procedures for processing media credentials applications and for applicants denied a credential to appeal an adverse decision are constitutionally inadequate. Plaintiffs are suffering irreparable injury under both the First Amendment and the Fourteenth Amendment for which there is no adequate remedy at law. Absent intervention by this Court, Plaintiffs will continue to suffer irreparable injury.

67.     Plaintiffs are entitled to a preliminary and permanent injunction ordering Defendant to issue Texas House of Representatives media credentials pass cards for the 86th Texas Legislature to Plaintiffs Waltens and Sensky and prohibiting Defendant from denying Plaintiffs access to the hall of the Texas House of Representatives in the same manner as other media representatives.

68.     Plaintiffs are entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## Count III
## 28 U.S.C. §2201-02
## Declaratory Judgment Act

69.     Plaintiffs repeat and reallege each of the foregoing allegations in this Complaint.

70.     Plaintiffs are entitled to a declaratory judgment that Plaintiffs are entitled to issuance of Texas House of Representatives media credentials and may not be prohibited from accessing the hall of the Texas House of Representatives in the same manner as other media representatives.

71.     Plaintiffs are entitled to a declaratory judgment that Defendant's procedures for processing media credentials applications and for applicants denied a credential to appeal an adverse decision are constitutionally inadequate.

## Prayer for Relief

**WHEREFORE**, Plaintiffs respectfully request this Court enter judgment in their favor and against Defendant and provide the following relief:

A.      A declaratory judgment that Plaintiffs are entitled to issuance of Texas House of Representatives media credentials and may not be prohibited from accessing the hall of the Texas House of Representatives in the same manner as other media representatives;

B.     A declaratory judgment that Defendant's procedures for processing media credentials applications and for applicants denied a credential to appeal an adverse decision are constitutionally inadequate;

C.     A permanent injunction ordering Defendant to issue Texas House of Representatives media credentials pass cards for the 86th Texas Legislature to Plaintiffs Waltens and Sensky and prohibiting Defendant from denying Plaintiffs access to the hall of the Texas House of Representatives in the same manner as other media representatives;

D.     A preliminary injunction granting the relief specified above during the pendency of this action;

E.     Plaintiffs' reasonable costs and expenses of this action, including attorneys' fees, in accordance with 42 U.S.C. § 1988 and all other applicable laws; and

F.     All other further relief to which Plaintiff might be entitled.

Respectfully submitted,

*The Law Offices of Tony McDonald*

By:  /s/ Tony McDonald

Tony McDonald
Attorney at Law
State Bar No. 24083477
807 Brazos Street, Suite 902
Austin, TX 78701
(512) 271-8669 (office)
(512) 923–6893 (cell)
(815) 550–1292 (fax)
tony@tonymcdonald.com

*Counsel for Plaintiffs*

Dated April 16, 2019